**DANA CARPENTER**
**Attorney at Law**
**111 W. Monroe St., Suite 1210**
**Phoenix, AZ  85003**
**(602) 266-5770 phone**
**(602) 254-0404 fax**
**danacarpenter5@gmail.com**
**State Bar No.007320**

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR08-0256-PHX-SMM |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT** |
| Marcos Branch, | |
| Defendant. | |

Defendant, Marcos Branch, by and through undersigned counsel, hereby submits the following Objections to the Presentence Investigation Report pursuant to Rule 32(f), Federal Rules of Criminal Procedure; 18 U.S.C. §3552; and the defendant's right of allocution pursuant to the Fifth and Sixth Amendments to the United States Constitution.

I.     **FACTUAL OBJECTIONS.**

   **A.  Identifying Data: Race, p. 2.**

       The defendant is a Hispanic male.  Defendant requests the court amend reference to his race from "White, Non-Hispanic" to "White, Hispanic."

   **B.  Identifying Data: Last Address, p. 2.**

       The defendant's correct address is 17625 N. 7th St., #2152, Phoenix, Arizona 85022. Defendant requests the court delete reference to 75th St. and amend the address to read 7th St.

   **C.  The Offense Conduct, p. 4, ¶ 5.**

       Defendant moves to have the fourth sentence amended and the following additional information added to this offense conduct section in order to accurately reflect defendant

1   Branch's participation.

2   "The straw buyer's employment, income, assets, liabilities, and intent to occupy the

3   property were fraudulently presented on the loan applications.  Marcos Branch was a loan

4   officer who participated in two of the loans represented in counts 18 and 32 of the

5   indictment.  With regard to the loan involving count 32 of the indictment, Branch acted as

6   the loan officer.  He added un-indicted co-conspirator Shiplett to his bank account for A&B

7   Consulting, and allowed $35,600.00 in proceeds from the loan to be run through this account.

8   He received the funds from co-defendant Bartlemus and delivered the funds to co-defendant

9   John Webber's account.  Branch received his normal commission of $3,000.00 as a result of

10  this real estate transaction.  With respect to count 18 of the indictment, Branch was not the

11  loan officer and advised co-defendant Adorno that it was too risky to be involved with two

12  loans in which the owner/occupier was the same in both loans.  Branch later received

13  $17,752.00 again through his bank account for which he had not given permission for

14  Adorno to do.  However, Branch went ahead and, again, forwarded the funds he received

15  from co-defendant Bartlemus to co-defendant Webber."

16      **D. Culpability Assessment, p.6, ¶ 13.**

17      Defendant requests the court amend this paragraph in its entirety as set forth below:

18      "Branch acted as the loan officer on one property.  Branch recommended two other

19  loan officers for three other properties that were brought to his attention.  Initially Branch had

20  phone contact with Bernadel, who introduced him to Adorno.  Seven months later, Branch

21  met Bernadel in a face to face meeting, but no real estate business was conducted, as Branch

22  believed the loan files in Bernadel's possession were too deficient.  Branch allowed one

23  straw buyer to use his bank account to qualify for a loan.  He is responsible for the loss

24  amount associated with the properties at counts 18 and 32 of the indictment.  Branch began

25  working as a loan officer on or about August of 2001 and learned how to perform the

26  functions of a loan officer by learning from other loan officers working around him."

27      **E. Acceptance of Responsibility, p.7, ¶ 19.**

28      Defendant requests the court amend this paragraph to read as follows:

2

"The defendant reported Bernadel introduced him to Adorno.  Adorno asked him to be the loan officer on two of the loans, and the defendant agreed to be the loan officer only on the first loan.  With regard to the first loan, Shippett's salary and/or her bank reserve were not enough to qualify for the loans, and at Adorno's request, the defendant verified her salary using the website www.salary.com, which the defendant knew other loan officers used, as well as underwriters at banks.  The defendant added Shiplett to his bank account, thereby assisting Shiplett in misrepresenting her assets.  The defendant refused to act as the loan officer for the second loan because he knew Shiplett already occupied the first property and could not be the owner/occupier on the second property at the same time.  The defendant knew as a result of his misrepresentation, lenders would wire money to finance the mortgages."

## II.    LEGAL OBJECTIONS.

### A.  Offense Level Computation, p. 7, ¶ 22, Loss Amount.

Defendant objects to the loss amount of $1,820,000.00.  The loss attributable to this defendant, pursuant to the plea agreement and his relevant conduct under the sentencing guidelines, would be the loss after foreclosure for the two properties listed in counts 18 and 32 of the indictment.  Defendant will provide the actual loss amount after consultation with the United States Attorneys Office.  However, defendant believes this figure is between $200,000.00 and $400,000.00, hence the guideline increase for loss amount should be Level 12.

### B.  Offense Level Computation, p. 7, ¶ 22, Victims.

There should be no increase to the base offense level for the number of victims involved.  The victims in counts 18 and 22 of the indictment were Washington Mutual Bank and Deutfche Bank.  Therefore, these two banks were the mortgage holders and the victims of the counts relating to defendant Branch.  Therefore, there should be no increase in the number of victims involved in the offense.  This results in a base offense level of 19 (Base, +7; Loss, +12).

**C.  Adjustments for Role in the Offense, p.7, ¶ 25, Special Skills.**

The presentence report adds two offense levels, suggesting the defendant used a "special skill" as a loan officer, and did so in a manner that significantly facilitated the commission or concealment in the offense.  For the reasons set forth below, there should be no adjustment for role in the offense.

In *United States v. Lee*, 296 F.3d 792 (9th Cir. 2002), the Ninth Circuit set forth the legal parameters for an increase due to an adjustment for role in the offense pursuant to U.S.S.G. § 3B1.3.  The special skill adjustment applies when a defendant "...used a special skill, in a manner that significantly facilitated the commission or concealment of the offense..." U.S.S.G. § 3B1.3 (2008).  The application note defines "special skill" as a "skill not possessed by members of the general public, and usually requiring substantial education, training, or licensing.  Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 (2008), Commentary, Application n.4.  In *Lee*, the Ninth Circuit analyzed a defendant who had created a website and a registration package not authorized by the lawful owners of the website.  In effect, the defendant created an unauthorized website and collected registration fees without authority.  The Ninth Circuit then carefully analyzed the line of cases existing up to 2002.

"Our own cases have suggested factors that might make a skill 'special' for purposes of this sentencing adjustment, including a 'public trust' rationale, the level of sophistication, and special educational or licensing requirements. (footnotes omitted).  But this adjustment becomes open-ended to the point of meaninglessness, that the 'special skill' is taken out of its context.  There probably isn't an occupation on earth that doesn't involve some special skill not possessed by people outside it, and few of us who sit as judges would know how to do the work of most of the people who appear before us.  So asking whether a skill is 'special,' in the sense of not being common among the adult population, like driving a car, doesn't get us very far toward deciding any cases.

And focusing much on the 'specialness' of a skill is also hard to reconcile with our precedents.  In *United States v. Harper*, the defendant's skills were very special indeed.  The

robber had worked for both a bank and an ATM service company, and used the knowledge gained in both occupations to come up with a unique scheme to rob an ATM.  At just the right time for the last service call of the day, when the ATM service office would empty out while the robbery was going on, she made a withdrawal from an ATM but didn't take the money.  She knew that leaving the cash would case the ATM to shut itself down and generate a service call, which would put technicians on the site, and that they would open the machine so that she and her confederates could rob it.  As skills go, Harper's were quite special, but we reversed the sentence because they weren't like those of 'pilots, lawyers, doctors, accountants, chemists, and demolition experts.'"  *United States v. Lee*, 296 F.3d at 798-99.

The Ninth Circuit further noted that at one end of the spectrum was an expert computer hacker of the kind found in *United States v. Petersen*, in which the "special skills" in *Hansen* were found to apply, as opposed to the counterfeiter in *United States v. Green*, 962 F.2d 938 (9th Cir. 1992), in which the "special skill" enhancement was found not to apply. In *Peterson*, the Ninth Circuit found that the defendant had no formal training in computers. However, the Ninth Circuit agreed with the District Court in finding that the defendant was skilled at accessing and manipulating computer systems.  Furthermore, the court found that the computer skills of the defendant were of a high level and "not possessed by members of the general public."  98 F.3d at 506-07.  The court noted: "Despite Petersen's lack of formal training or licensing, his sophisticated computer skills reasonably can be equated to the skills possessed by pilots, lawyers, chemists, and demolition experts for purposes of § 3B1.3."  98 F.3d at 507.

On the other hand, the Ninth Circuit found in *United States v. Green*, 962 F.2d 938 (9th Cir. 1992), the court determined that a counterfeiter who had preexisting skills in printing was not eligible for the "special skill" enhancement of § 3B1.3.  "Green was not a professional photographer, nor does the record indicate that he possessed any greater photography skills than most individuals.  The fact that the negatives seized from him were allegedly skillfully produced does not support the imposition of the special skill enhancement."  962 F.2d at 944-45.  The Ninth Circuit agreed with the Fifth Circuit in *Green*

that a pre-existing skill in printing does not facilitate the crime of photographing federal reserve notes.  See, *United States v. Foster*, 876 F.2d 377, 378 (5th Cir. 1989).

In light of the legal parameters for application of the "special skill" enhancement set forth in *Petersen* and *Green*, the court found that Lee's copying of a website was more like the counterfeiting of Green, rather than Peterson's computer hacking.  As a result, the "special skills" enhancement was not applied to defendant Lee for fabricating a website.

A loan officer typically processes around five documents (W2's, bank statements, mortgage statements, pay subs, and home owner insurance documents).  These documents are reviewed and then the loan officer normally engages in the following five-step process.  First, review the documents outlined above.  Second, fill out the loan application.  Third, obtain a credit report for the applicant.  Fourth, call the bank and check if the application was approved.  Fifth, notify the client if the loan is approved by the bank.  The defendant was instructed on how to accomplish these tasks by the more experienced loan officers with which he worked.  Mr. Branch obtained no special education, training, degrees, or licenses.  While "special skills" can be obtained through self-teaching and over time, the skills of a loan officer do not rise into the high level of skills required to be a doctor, lawyer, demolition expert, etc.  Nor are the skills of a loan officer "not possessed by members of the general public." (Namely, reviewing a document; filling out an application; obtaining a credit report; phoning the bank; and notifying someone; all are common skills regularly engaged in by members of the public).  Therefore, defendant moves the court to strike the two offense level increase for use of a "special skill."

The defendant's total offense level should be 16, not 26.

| | |
|---|---|
| Base Offense Level | +7 |
| Loss ($200,000 - $400,000) | +12 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | +16 |

1

2      RESPECTFULLY SUBMITTED this_____24th_____ day of March, 2010.

3

4

5                                        s/Dana Carpenter
                                         Dana Carpenter
6                                        Attorney for Defendant

7

8

9                  **CERTIFICATE OF FILING AND SERVICE**

10

11   I hereby certify that on March 24, 2010,
     I electronically transmitted the attached
12   document to the Clerk's Office using the
     CM/ECF System for filing and transmittal
13   of a Notice of Electronic Filing to the
     following CM/ECF registrants:
14

15   Honorable Steven M. McNamee
     United States District Court Judge
16
     *Kevin Rapp
17    Assistant United States Attorney

18   *Suzanne Squires
      United States Probation Officer
19
     *HAND-DELIVERED
20

21

     By:__Valerie Porter_____
22           Legal Assistant
             Law Office of Dana Carpenter
23

24

25

26

27

28