DENNIS K. BURKE
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
kevin.rapp@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>       v.<br><br>Marcos Raul Branch,<br><br>              Defendant. | CR-08-00256-PHX-SMM<br><br>**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1, RESPONSE TO OBJECTIONS, AND SENTENCING RECOMMENDATION** |

       The Plaintiff, United States of America, moves for a downward departure pursuant to U.S.S.G. § 5K1.1 for the reasons set forth in the attached Memorandum, responds to Defendant's objections and provides a sentencing recommendation for the court's consideration. This memorandum addresses both United States Sentencing Guidelines ("U.S.S.G.") and Title 18, United States Code, Section 3553 factors to be considered when imposing sentence. The defendant's sentencing is scheduled for April 13, 2010.

## MEMORANDUM

The United States of America ("the government"), by and through its undersigned attorney, respectfully moves pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and U.S.S.G. § 5K1.1 to authorize this Court to depart downward from the minimum sentence dictated by the advisory Sentencing Guidelines and statute for the offense to which the above defendant has entered a guilty plea. In support of its motion, the government states as follows:

## I.   GOVERNMENT'S MOTION TO AUTHORIZE A DOWNWARD DEPARTURE

Section 5K1.1 of the Sentencing Guidelines allows the court to depart downward in the defendant's sentence for the defendant's assistance to the government. The appropriate reduction shall be decided by the court after consideration of certain factors. Those factors include, but are not limited to the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered:

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the assistance.

The United States moves this Court for a downward departure pursuant to U.S.S.G. § 5K1.1 based upon defendant Branch's substantial assistance to the government in its investigation of a mortgage fraud conspiracy.

## II.   ANALYSIS

### A. Significance and Usefulness of Defendant's Assistance

Defendant Branch's immediate cooperation was significant enough to warrant the filing of this motion. First, Branch provided a statement to investigating agents prior to indictment and arrest. Following his arrest he continued to cooperate with the undersigned attorney and investigating agents. Specifically, Branch detailed his involvement with co-defendants April Lucero and Amanda Adorno in connection with the loans involving straw buyer Christine Shiplett.  He was candid about adding Shiplett to his bank account to insure that Shiplett qualified for the loan. He also provided agents information about his contact with Mario Bernadel. As the court knows, Branch testified at trial about these events as well. In the final analysis, Branch's involvement in the conspiracy was limited, but he willingly cooperated and admitted his guilt.

**B.  Truthfulness, Completeness and Reliability of Information and Testimony**

Based on the government's investigation to date, Branch's information has been truthful, complete, and reliable.  The defendant's information has been corroborated by documentary evidence and other cooperators' information including co-defendants Amanda Adorno and Christopher Bartlemus.  Accordingly, the government submits the defendant's information to be truthful.

**C.  Nature and Extent of Defendant's Assistance**

The nature and extent of defendant Branch's assistance was important to an understanding of the various roles of the other co-conspirators in the conspiracy.  His cooperation has extended throughout the prosecution of this case.

**D.  Danger of Risk of Injury**

The government is not aware of any overt threat to defendant Branch's safety.  The government submits that at least a moderate risk to the defendant is self-evident based on the inherent risks of cooperating.

**E.  Timeliness of Assistance**

Defendant provided information and cooperated *prior* to indictment and arrest and as needed thereafter.  The government submits that defendant's assistance was timely.

## III.    RESPONSE TO FACTUAL OBJECTIONS

### A.  Identifying Data: Race, p.2

The government has no objection to Defendant's request to amend the reference to his race from "White, Non-Hispanic" to " White, Hispanic."

### B.  Identifying Data: Last Address, p. 2

The government does not object to the request to amend the defendant's address.

### C.  The Offense Conduct, p. 4, ¶ 5

The government does not object to the additions to the offense conduct section as recommended by the defense.

### D.  Culpability Assessment, p.6, ¶ 13

The government has no objection to the amendment to paragraph 13 has recommended by the defendant. The recommended factual recitation is consistent with the defendant's testimony and the facts of the case as known by the Government.

### E.  Acceptance of Responsibility, p. 7, ¶ 19

The Government has no objection to the factual recitation recommended by the defendant.

## IV. RESPONSE TO LEGAL OBJECTIONS

### A.  Offense Level Computation, p. 7, ¶ 22, Loss Amount

The PSR holds the defendant responsible all four properties purchased by Christine Shiplett and the loss on his own property which results in an aggregate loss of $1,820,000.00. The parties, however, stipulated early on in plea negotiations to a loss of between $200,000 and $400,000. The stipulation accounts for the loss only on a single property where Branch initiated the loan for Shiplett.  The government urges the court to accept this stipulation.

### B.  Offense Level Computation, p. 7, ¶ 22, Victims

The defense is correct that given the number of loans that Branch was involved in the victim lenders did not exceed ten.  Accordingly, there should be no upward departure for victims pursuant to U.S.S.G. §2B1.1(b)(2).

### C. **Adjustments for Role in the Offense, p. 7, ¶ 25, Special Skills**

The defense argues that Branch should not be subject to a two-level upward adjustment for special skill.  "Section 3B1.3 provides for the two-level increase 'if the defendant abused a position of public or private trust, *or used a special skill*, in a manner that significantly facilitated the commission or concealment of the offense….'" (*Emphasis added*)  A special skill is one "not possessed by members of the general public and usually requiring substantial education, training or licensing."  *United States  v. Hoskins*, 282 F.3d 772, 778 (9th Cir. 2002); *United States  v. Brande*, 53 Fed. App'x 338, 342 (9th Cir. 2004) (quoting U.S.S.G. 3B1.3, comment, n. 3).

First, a loan officer, such as Branch, will now have to be licensed by the state of Arizona.[1] In the course of their activities, a loan officer will undertake a myriad of tasks, those tasks can include marketing to attract clients.  Once they have obtained a client/borrower they will make an assessment of the borrowers circumstances.  This may include an assessment of credit history and affordability.  This assessment is clearly what Branch did with respect to Shiplett's financial circumstances.  A loan officer also makes an assessment of the market to find a mortgage product that fits the needs to the clients.  Then a loan officer will apply for a lender's agreement

---

[1]    As of July 1, 2010 all mortgage loan officers in Arizona will fall under the supervision (licensing and regulation) of the Arizona Department of Financial Institutions (DFI) in order to ensure compliance with the SAFE Act. The *Secure and Fair Enforcement for Mortgage Licensing Act of 2008* ("SAFE Act"), was passed on July 30, 2008.  The new federal law gave states one year to pass legislation requiring the licensure of mortgage loan originators according to national standards and the participation of state agencies on the Nationwide Mortgage Licensing System and Registry (NMLS). The SAFE Act is designed to enhance consumer protection and reduce fraud through the setting of minimum standards for the licensing and registration of state-licensed mortgage loan. Mortgage loan originators who work for an insured depository or its owned or controlled subsidiary that is regulated by a federal banking agency, or for an institution regulated by the Farm Credit Administration, are registered. All other mortgage loan originators are licensed by the states.

1
2
3
4

in principle.  In connection with the application they will gather required documents such as pay stubs/payslips, bank statements, etc.  They are also responsible for completing the lender application, explaining legal disclosures and submitting all the material to the lender.  A loan officer, therefore, has a special skill when compared to the average person.

5
6
7
8
9
10

Here, Branch recognized that Shiplett did not have sufficient assets to qualify for a loan based on her current circumstances  and that was what precipitated him adding her to his bank account. It is clear that he used his special skill as a loan officer that  involves some of the duties outlined above to facilitate her loan.  His skill as a loan originator, requires both training and licensing.  He, therefore, should be subject to the two level enhancement pursuant to § 3B1.3, for using his skill to facilitate the fraud.

11

## V.    ANALYSIS OF FACTORS PURSUANT TO TITLE 18, U.S.C. § 3553.

12
13

### A.  Nature and Circumstances of the Offense

14
15
16
17
18
19
20

Defendant, a loan originator, pleaded guilty to being involved in a scheme and artifice to defraud lending institutions by facilitating a loan in the name of an unqualified "straw buyer/ borrower"–Shiplett– bv adding her to his bank account.  Defendant received his ordinary commission for originating the loan.  Due, in part to his actions, the banks sustained losses as Shiplett had neither the ability nor the intention of making the mortgage payments. The indictment includes a broader conspiracy, but Branch was only involved in two discrete transactions.

21

### B.  History and Characteristics of the Defendant

22
23
24
25
26

Defendant has had only a single prior contact with the criminal justice more than seventeen years ago for a minor offense.  Otherwise, he has been completely law-abiding. His employment history has been stable.  Although he has had two marriages that have ended in a divorce he is currently engaged to be married.  His current employment situation and responsibility for his minor daughter weigh in his favor.

27
28

**C.  <u>Need for Sentence to Address Additional Title 18, U.S.C. § 3553 Factors</u>**

The sentence advised by the guidelines is reasonable upon consideration of the nature and circumstances of the offense and history and characteristics of Defendant as discussed above, and the additional 18 U.S.C. § 3553 factors, as set forth below:

(1) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment;

(2) to afford adequate deterrence to criminal conduct;

(3) to protect the public from further crimes of the defendant; and

(4) to provide the defendant with educational or vocational training, medical care or other correctional treatment.

Co-defendants Mario Bernadel, April Lucero, Amanda Adorno and others orchestrated a scheme to recruit straw buyers for the purchase of real estate  that resulted in an excess of a million dollars in losses to lending institutions. Instead of using the illegally obtained cash back to maintain the mortgages, in most instances, they spent the money on personal items including luxury vehicles.

The defendant was involved in two of these transactions.  He used his knowledge as a loan originator to facilitate the fraudulent transactions.  He did not, however, receive a portion of the cash back.  Instead, he received only his ordinary commission for facilitating the loan.

Nevertheless, the Phoenix metropolitan area has experienced an exponential increase in foreclosures, many due to mortgage fraud.  As a result, punitive measures need to be meted out to those industry professionals who bear responsibility for enabling fraudulent transactions that have resulted in foreclosures.  Accordingly, to promote respect for the law, provide just punishment, afford an adequate deterrent and to protect the public, it is appropriate that defendant receive a felony conviction and be placed on supervised release for a period of three

years.  This will prevent Branch  from working in the financial services and real estate industry.

Moreover, it will subject him to supervision of his own financial affairs.

## VI.     GOVERNMENT'S SENTENCING RECOMMENDATION

Before the court is 35-year-old adult male, who has resided in Phoenix for most of his adult life.  He has had a single previous contact with the criminal justice system more than seventeen years ago for a minor offense.  His employment history and family situation appears to be moderately stable.  Although the guidelines dictate a prison sentence, the government recommends a term of supervised release.  In light of the fact that Branch was involved in only two transactions and both Parrish and Adorno have received supervised release the government also recommends the same disposition for Branch.[2]

Respectfully submitted this 5th  day of April, 2010.


DENNIS K. BURKE
United States Attorney
District of Arizona


s/Kevin M. Rapp
KEVIN M. RAPP
Assistant U.S. Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on April 5th, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Dana Carpenter, Attorney for Branch.


By: Michelle L. Colberg

---

[2]  Like Branch, Parrish and Adorno were both loan officers that cooperated pre-indictment.